# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MARTINO O'BRYANT,                        )
                                         )
          Plaintiff,                     )
                                         )
               v.                        )        No. 4:26-cv-00077-RHH
                                         )
NICO TERRACE, et al.,                    )
                                         )
          Defendants.                    )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on self-represented Plaintiff Martino O'Bryant's application to proceed in the district court without prepaying fees or costs. Having reviewed the application, the Court will grant it and waive the filing fee. Furthermore, after initial review, the Court will dismiss this action.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e), a Court must dismiss an indigent plaintiff's complaint that (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Dismissals on this ground should only be ordered when legal theories are "indisputably meritless," or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). "Clearly baseless" factual

allegations include those that are "fanciful," "fantastic," and "delusional."  *Id.* at 32-33 (quoting *Neitzke*, 490 U.S. at 325, 327).

### The Complaint

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 alleging Defendants Nico Terrace, Carmen Hills Group, and Christine Travaglini violated the Fair Housing Act, the Civil Rights Act, his due process rights, and several state laws. He asserts Defendants charged him unlawful fees and then instituted a campaign to exacerbate his schizophrenia and force him from his apartment.

He states that Nico Terrace charged him fraudulent fees and then "began using harassing tactics designed to aggravate [his] [schizophrenia], as they put forth a monumental effort to employ tactics of using a variety of different sounds that would eventually convince me to vacate the apartment."  Doc. 1 at 9.  He alleges Nico Terrace also "devised a dangerous scheme that entailed [him] being shot at by their 16 year old female tenant and exposed me to abnormal amounts of sounds that created 'mental distortion,'" causing him to be hospitalized for 30 to 40 days.  *Id.* Plaintiff states that after his discharge from the hospital, Nico Terrace began using their tenants to try to get Plaintiff to become violent, "so [he] called the Crime Victims unit and began therapy as a means of coping with the situation."  *Id.*

Plaintiff alleges fellow tenants began breaking into his apartment, causing him to change his locks three times.  "Each time I changed the locks, they'd enter the

apartment and break my belongings (microwave) to show me that they could enter whenever they wanted to do so.   They even found a way to block the wi-fi signal that linked my laptop to my printer."   *Id.* at 10.   He alleges tenants also began breaking into his car, but the police would not take fingerprints.

As part of his injuries, he states that he "missed opportunities to train as I was preparing to develop my skill sets as a tennis player so I could compete for developmental income as a maturing, prize money tennis player."   *Id.*   Defendants also caused Plaintiff "missed opportunities to retain highly competitive employment as my car was [sabotaged,] kept stalling and was constantly leaking anti-freeze." *Id.*   He adds, "Nico Terrace had one of their young female tenants shoot at me so I would be extremely hesitant to defend myself against those who harassed me. Their goal was to turn away sponsorship prospects by showing them a player who was cautions about facing altercations."   *Id.*

Plaintiff includes a one-page typewritten explanation of the tennis prize money he did not receive because of Defendants' actions.   He explains that tennis grand slam tournaments award $3.6 million for a singles winner and $1.8 million to the runner up.   Under the elite tier, he suggests that he could be undefeated and earn over $1.1 million.   He could also win money at lower-tier tennis tournaments, including the ITF World Tennis Tour.   Doc. 1-1 at 3.

He also alleges he had disputes with Nico Terrace regarding the financial terms of his lease and his lease termination.   At one point, he states he had an outstanding balance of $341 and Nico Terrace told him the balance must be paid within 24 hours.   *Id.* at 7.   He continues:

> As such, the majority of tenant[s'] [leases] expire and management increases their rent by $175 to $250 and assesses a late fee of $350 to $400.   Nico Terrace collects $550 to $650 for every fraudulent claim that a tenant's lease has expired.   They are not in the business of issuing passwords.   Their fraudulent claims allows them to embezzle a healthy $8,000 to $10,000 annually from tenants who aren't aware of their rights.

*Id.* at 8.

Plaintiff states Defendants evicted him on September 5, 2024 despite his documentation that management was threatening to evict tenants whom they could not financially exploit.   *Id.*   Eventually, he was "evicted and terminated from the housing program."   *Id.*

He found housing elsewhere, but he "firmly believe[s] that within the 2 months, defendants were briefing tenants on how to harass me, place sound devices throughout my apartment and draft a lease agreement that would lead to my eviction."   *Id.*   He alleges sound devices were used at 2:30 a.m. to generate noise resembling someone beating on his walls.   These sounds began in his bathroom, moved to his living room, and then to the hallway.   *Id.* at 11.

Plaintiff alleges Defendants hacked his cell phone and blocked the signal; briefed other tenants on tactics to ensure Plaintiff would become violent so Defendants could evict him; changed the locks on his mailbox so he could not receive his high blood pressure medicine to "lead to [Plaintiff's] death or serious heart problems." *Id.* at 12. He also alleges Defendants used a device to block a signal on his heart monitoring device. *Id.*

Plaintiff's allegations continue in this vein for more than 13 pages: "I'm a victim of defendants illegal housing practice, as they convinced their tenants to shoot at me, resulting in a threat of force, which abridges my housing rights." *Id.* at 15. Defendants were "forcing me to spend money on hotels every weekend and eventually placing me in an apartment that was strategically rigged with sound devices." *Id.* "Defendants would employ hotel patrons to yell outside my door, bang on the walls, turn up the tv, have their car alarms sounding for 7-10 minutes at 2 am." *Id.* at 16. "Defendants set forth a premeditated plan to fire an oozie in my apartment complex." *Id.* "I am a victim of sexual harassment as female tenants watch me intensely, with lust in their eyes, as I executed a flawless tennis training practice regimen." *Id.* He alleges sex and disability discrimination under the Fair Housing Act. He also alleges due process violations. *Id.* at 21-22.

Plaintiff later filed supplements to his complaint, attaching documents from his state court case against Defendants. Doc. 5. He has filed a "Motion for Order

Authorizing a Sound Specialist to Reenact the Sounds in Apt. Unit 8335F."  Doc. 9.  His proposed sound reenactment, "no doubt, will build a rage within me as I constantly listen to the sound of the basketball bouncing as though it was in a high-volume basketball dribbling simulator."  *Id.*  He also alleges Defendants contacted his pharmacy and changed the address on his prescriptions to retaliate against him.  Doc. 10.

For relief, Plaintiff seeks $400 million and declaratory judgment.  Doc. 1 at 5; Doc. 1-1 at 19-20, 26.

### Discussion

Based on the complaint and Plaintiff's supplemental filings, the Court finds Plaintiff's claims lack an arguable basis in either law or fact, and are frivolous.  His claims rely on factual allegations that are "clearly baseless" under *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  Any legal theories are indisputably meritless and the factual allegations are "fanciful," "fantastic," and "delusional."  *See id.* (quoting *Neitzke v. Williams,* 490 U.S. 319 (1989)).  To the extent Plaintiff has alleged any violations of the Fair Housing Act or Civil Rights Act, such allegations are entirely speculative and conclusory.  Thus, the Court finds that Plaintiff's complaint is frivolous and fails to state viable legal claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in the

district court without prepaying fees and costs is **GRANTED**.   [Doc. 2]

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** without prejudice as moot.   [Docs. 3 and 9].

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 8th day of May, 2026.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE